**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **VIRGIL L. SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-0413** |
| **N. BURL CAIN, WARDEN** | **SECTION "F"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.    Factual and State Procedural Background**

The petitioner, Virgil L. Smith ("Smith"), is a convicted inmate incarcerated in the Louisiana State Penitentiary at Angola, Louisiana.[2] On November 21, 2002, Smith was charged by bill of information in St. Tammany Parish for the public intimidation of St. Tammany Parish Sheriff's

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 2.

Deputy Joseph Ceruti, Jr.[3]  The bill was amended on February 11, 2003, to add a second count of the public intimidation of Officer Shayne Parker.[4]

The record reflects that, on September 4, 2002, Shayne Parker was on duty as an intake officer at the St. Tammany Parish correctional facility.[5]  Smith was housed in the isolation unit of that facility at the time on other charges.  Officer Parker came into contact with Smith while serving breakfast at about 7:30 a.m.  Smith told Officer Parker that he was tired of "f - -ing" with the deputies about getting his one hour out of the cell each day and having them close the window on his cell.  Smith appeared very angry.  Officer Parker told Smith that he had not been there for two days, he did not know what Smith was talking about, and he would look into it.

At that point, Smith told Officer Parker that he knew his name, his wife's name, his son's name, and where he lived.  Smith correctly called out each of their names and the address.  He also gave the name of a female mail deputy and told Officer Parker that he also knew she was married and her address.  Smith continued to complain that he was tired of getting "screwed over" by the deputies.  Smith told Officer Parker, "I will put a hit out on you and your family."  Smith also told Officer Parker that he wanted his isolation cell window left open and that he wanted to be placed on a telephone account that would allow him to make free calls outside of the jail.  Officer Parker indicated that if certain things were not done then Smith would carry out his threats, although Smith did not use those exact words.  Officer Parker understood that the conditions of Smith's threats were

---

[3]St. Rec. Vol. 1 of 5, Bill of Information, 11/21/02.

[4]*Id*., handwritten amendment dated 2/11/03; Trial Minutes, 2/11/03.

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  St. Rec. Vol. 3 of 5, 1st Cir. Opinion, 2004-KA-0799, pp. 3-4, 12/17/04; *State v. Smith*, 890 So.2d 35 (La. App. 1st Cir. 2004) (Table).

2

to leave his cell window open and to allow him out of his cell for an hour a day. Smith told him that if the deputies did not stop "f - -ing" with him, "I'm going to put a hit out on your family."

Officer Parker insisted that the gist of the exchange was that Smith informed him that a hit would be ordered if he did not get the treatment he wanted. Since Officer Parker knew Smith had family in the Slidell area, he took the threat seriously when Smith demonstrated that he knew the names of his family members and his address. Officer Parker further confirmed that he had the authority to grant Smith an hour out of his cell and to keep the window open.

Deputy Joseph Ceruti, Jr. was also on duty that morning. When he heard Smith speaking loudly to Officer Parker, he went to the area to assist if needed. Deputy Ceruti heard Smith tell Officer Parker that he was tired of messing with the deputies about his hour out and his window, and tired of messing with the mail lady. Smith said that if he did not get his hour out of the cell and his window open, he was "going to get us and our family." He gave the specific name of Officer Parker's son and the name of the road on which Officer Parker lived. Smith also said he was going to "get them" if he did not get the death penalty. Deputy Ceruti indicated that he had the authority to give Smith an hour out of his cell if his superior ordered it and he had the authority to open the window as needed. Deputy Ceruti further testified that he had fear for his family as a result of the threat.

Smith was tried before a jury on February 11, 2003, and he was found guilty as charged on both counts.[6] Smith was to be sentenced on March 13, 2003, when the State filed a multiple

---

[6]St. Rec. Vol. 1 of 5, Trial Minutes, 2/11/03; Jury Verdict (Count 1), 2/11/03; Jury Verdict (Count 2), 2/11/03; Trial Transcript, 2/11/03; St. Rec. Vol. 2 of 5, Trial Transcript (continued), 2/11/03.

3

offender bill charging him as a second felony offender.[7]  At a hearing held on April 30, 2003, the Trial Court denied the defense motions for post-verdict judgment of acquittal and for new trial.[8]

The Trial Court held motions on the multiple bill on October 9 and November 12, 2003, after which the Court adjudicated Smith to be a second offender.[9]  The Court sentenced him to serve 10 years as a multiple offender on Count One, without benefit of parole, probation, or suspension of sentence.[10]  On Count Two, the Court sentenced Smith to serve five years concurrent with the sentence on Count One.  The Court also denied the defense motions to reconsider the sentence.[11]

On direct appeal, Smith's counsel raised three assignments of error:[12] (1) insufficient evidence to support the conviction; (2) the Trial Court erred in admitting an uncertified copy of his rap sheet during the multiple offender proceeding; and (3) excessive multiple offender sentence.  On December 17, 2004, the Louisiana First Circuit Court of Appeal affirmed Smith's conviction finding no merit to the insufficient evidence claim.[13]  The Court, however, found merit in the second claim regarding the competency of the evidence at the multiple offender proceeding.  The Court vacated the multiple offender adjudication and sentence and remanded the matter for further

---

[7]St. Rec. Vol. 1 of 5, Minute Entry, 3/13/03; Multiple Bill, 3/13/03; St. Rec. Vol. 2 of 5, Hearing Transcript, 3/13/03.

[8]St. Rec. Vol. 1 of 5, Minute Entry, 4/30/03; Motion for Post-Verdict Judgment of Acquittal, 3/18/03; Motion for New Trial, 3/18/03; Motion for New Trial, 4/30/03; St. Rec. Vol. 2 of 5, Hearing Transcript, 4/30/03.

[9]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 10/9/03; Multiple Bill Hearing Minutes, 11/12/03; St. Rec. Vol. 3 of 5, Hearing Transcript, 10/9/03; Sentencing Transcript, 11/12/03.

[10]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 11/12/03.  In light of this, it appears that the defense motions to quash the multiple bill, having been deferred to these hearings, became moot.  St. Rec. Vol. 1 of 5, Motion to Quash, 3/18/03; Motion to Quash, 4/30/03; Motion to Quash, 10/9/03.

[11]*Id.*; St. Rec. Vol. 1 of 5, Motion to Reconsider Sentence, 11/13/03; Trial Court Order, 11/13/03.

[12]St. Rec. Vol. 3 of 5, 1st Cir. Opinion, 2004-KA-0799, 12/17/04.

[13]*Id.*

proceedings. The Court further held that this rendered moot Smith's third claim on appeal.[14] On April 29, 2005, the Louisiana Supreme Court denied without stated reasons the subsequent writ applications filed by Smith and the State from the appellate court's order.[15]

On remand, the Trial Court conducted another hearing on the multiple bill on July 6, 2005.[16] The Court again found Smith to be a second offender, and resentenced him on Count One as a multiple offender to serve 10 years in prison without benefit of parole, probation, or suspension of sentence. The Court also issued written reasons in support of its decision on October 11, 2005.[17]

The record also contains an order indicating that, on June 13, 2005, Smith filed an application for post-conviction relief in connection with this and one of his other criminal cases alleging that he received ineffective assistance of counsel.[18] The Court later denied Smith's motion for new trial.[19]

---

[14]*Id.*

[15]*State v. Smith*, 901 So.2d 1063 (La. 2005); *State v. Smith*, 901 So.2d 1067 (La. 2005); St. Rec. Vol. 3 of 5, La. S. Ct. Order, 2005-K-0154, 4/29/05; La. S. Ct. Order, 2005-K-0448, 4/29/05; St. Rec. Vol. 4 of 5, La. S. Ct. Letter, 2005-K-0154, 1/19/05; La. S. Ct. Letter, 2005-K-448, 2/22/05.

[16]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 7/6/05; St. Rec. Vol. 3 of 5, Hearing Transcript, 7/6/05.

[17]St. Rec. Vol. 3 of 5, Written Reasons, 10/11/05.

[18]The record does not contain a copy of any such application. St. Rec. Vol. 3 of 5, Reasons for Denying Post-Conviction, 10/19/05.

[19]St. Rec. Vol. 4 of 5, Motion for New Trial, 12/7/05; Trial Court Order, 1/10/06.

On appeal from the resentencing,[20] Smith, acting *pro se*, sought an order directing the State to produce documents he requested so that he could pursue his appeal.[21] The Louisiana First Circuit ordered that the matter be remanded to the Trial Court to determine counsel, or the waiver thereof, to assist in the lodging of a proper appeal from the resentencing.[22]

Smith's appointed counsel thereafter raised two assignments of error:[23] (1) the Trial Court erred in adjudicating Smith to be a second offender; and (2) the multiple offender sentence was excessive. The Louisiana First Circuit affirmed Smith's adjudication and sentence on December 28, 2006, finding no merit in either claim.[24]

Smith's conviction and sentence became final 30 days later, on Monday, January 29, 2007,[25] because he did not timely file for review in the Louisiana Supreme Court.[26] *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his

---

[20]It appears that the Trial Court granted Smith leave to file an out of time appeal from his resentencing on July 6, 2005. St. Rec. Vol. 3 of 5, Motion for Appeal, 8/8/05; Trial Court Order, 8/19/05; Motion for Appeal, 10/31/05; Trial Court Order, undated.

[21]St. Rec. Vol. 5 of 5, 1st Cir. Writ Application, 2005-KA-2618, 12/28/05.

[22]St. Rec. Vol. 5 of 5, 1st Cir. Order, 2005-KA-2618, 3/22/06.

[23]St. Rec. Vol. 5 of 5, Appeal Brief, 2005-KA-2618, 7/25/06.

[24]*State v. Smith*, 947 So.2d 848, 2006 WL 3813687, at *4 (La. 1st Cir. Dec. 28, 2006) (Table, Text in Westlaw).

[25]The thirtieth day was Saturday, January 27, 2007, leaving the deadline to fall under both state and federal law to Monday, January 29, 2007.

[26]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)); *and see*, *See Jiminez v. Quarterman*, 555 U.S. 113, __, 129 S. Ct. 681, 686-87 (2009) (where a state court grants a criminal defendant the right to file an out-of-time appeal during state collateral review, his judgment is not yet final for purposes of seeking federal habeas review).

After his conviction became final, on February 6, 2007, Smith mailed an untimely[27] writ application to the Louisiana Supreme Court challenging the decision from his direct appeal.[28] The Court eventually denied the application without stated reasons on October 12, 2007.[29]

In the meantime, on May 23, 2007, Smith submitted an application for post-conviction relief to the Trial Court.[30] On June 4, 2007, the Trial Court dismissed the application finding that Smith failed to prove grounds for relief cognizable under La. Crim. Code art. 930.3.[31] Smith filed a notice of intent to seek review in the Louisiana First Circuit, however no such writ application was filed.[32]

On May 19, 2008, Smith submitted another application for post-conviction relief in which he raised five grounds for relief:[33] (1) he was constructively denied counsel during the multiple bill

---

[27]*See* prior footnote.

[28]The State's assigned counsel, Kathryn Landry, continually fails to comply fully with the Court's briefing orders requiring complete copies of the state court records, including those from the trial court, appellate court, and Louisiana Supreme Court. As a result, the record does not contain a copy of this writ application. *See* St. Rec. Vol. 4 of 5, La. S. Ct. Letter, 2007-KO-389, 2/26/07 (showing postmark 2/6/07).

[29]*State v. Smith*, 947 So.2d 396 (La. 2007); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2007-KO-0389, 10/12/07.

[30]St. Rec. Vol. 4 of 5, Memorandum in Support of Application for Post-Conviction Relief (page one only), 5/23/07.

[31]St. Rec. Vol. 4 of 5, Trial Court Order, 6/4/07.

[32]St. Rec. Vol. 4 of 5, Notice of Intent, 6/25/07; Trial Court Order, 7/10/07.

[33]St. Rec. Vol. 4 of 5, Memorandum in Support of Application for Post-Conviction Relief, 5/22/08 (dated 5/19/08).

proceedings; (2) he was exposed to double jeopardy on remand for the multiple bill proceedings; (3) the Trial Court erred in admitting other crimes evidence to support the sentence; (4) the Trial Court erred in not utilizing the statutory sentencing guidelines; and (5) the prosecutor used an improper guilty plea to enhance his sentence. The Trial Court denied relief on July 21, 2008, finding that Smith failed to prove a ground for relief cognizable under La. Code Crim. P. art. 930.3.[34]

The Louisiana First Circuit denied without stated reasons Smith's related writ application on January 9, 2009.[35] The Louisiana Supreme Court thereafter denied Smith's writ application to that Court on procedural grounds citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1761 (La. 1996).[36] The Court also denied Smith's request for reconsideration on February 26, 2010.[37]

## II.   **Federal Petition**

On March 1, 2010, the clerk of this Court filed Smith's petition for federal habeas corpus relief in which he asserts five grounds for relief:[38] (1) he was constructively denied counsel during the multiple bill proceedings; (2) he was exposed to double jeopardy on remand for the multiple bill proceedings; (3) the Trial Court erred in admitting other crimes evidence to support the sentence; (4) the Trial Court erred in not utilizing the statutory sentencing guidelines; and (5) the prosecutor used an improper guilty plea to enhance his sentence.

---

[34]St. Rec. Vol. 4 of 5, Trial Court Order, 7/21/08.

[35]St. Rec. Vol. 4 of 5, 1st Cir. Order, 2008-KW-2039, 1/9/09.

[36]*State ex rel. Smith v. State*, 23 So.3d 939 (La. 2009); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2009-KH-0567, 12/18/09; La. S. Ct. Letter, 2009-KH-567, 3/13/09 (showing postmark 2/18/09).

[37]*State ex rel. Smith v. State*, 28 So.3d 264 (La. 2010); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2009-KH-0567, 2/26/10.

[38]Rec. Doc. No. 2.

8

The State filed an answer and memorandum in opposition to Smith's petition alleging that the petition was timely filed and that the claims were exhausted through available state court remedies.[39] The State argues that Smith's claims are without merit, because he has pointed to no Supreme Court precedent which reached an opposite result on similar facts.

## III.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[40] applies to Smith's petition, which is deemed filed in this court under the federal mailbox rule on February 8, 2010.[41] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State has argued that the petition is timely and the claims are exhausted. The State, however, has failed to address the issue of procedural default as required by this Court's briefing order. A thorough review of the record, however, reveals that Smith's claims are in

---

[39]Rec. Doc. Nos. 13, 14.

[40]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[41]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Smith's federal habeas petition on March 1, 2010, when the pauper application was granted. Smith dated his signature on the petition on February 8, 2010. This is presumed to be the earliest date on which he could have been submitted the pleadings to prison officials for mailing.

procedural default, an obvious defense overlooked by the State's response, and the petition can be dismissed for that reason.

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court should determine as a threshold matter whether procedural default has occurred on any asserted claim. *Nobles*, 127 F.3d at 420. This court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered. *Fisher v. State*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998). The Fifth Circuit has stated that "[a] district court may, in its discretion, raise the affirmative defense of procedural default in habeas proceedings sua sponte." *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006) (citing *Magouirk*, 144 F.3d at 360). Before doing so, however, the district court should consider, "(1) whether the petitioner had notice that the district court was going to raise the defense sua sponte and had an opportunity to respond, and (2) 'whether the state's failure to raise the defense is merely inadvertence or the result of a purposeful decision to forgo the defense.'" *Id.* (quoting *Magouirk*, 144 F.3d at 360). Having considered these factors, the Court finds it appropriate to raise *sua sponte* the procedural default defense in this instance.

First, Smith is placed on notice by this Report and Recommendation that the Court is raising procedural default, and he will have an opportunity to specifically object to the procedural default defense. Second, the State's failure to raise the defense is clearly inadvertent. The State at no time examined the actual decisions of the state courts addressing Smith's claims. Both the state trial court and the Louisiana Supreme Court granted relief upon La. Code Crim. P. art. 930.3 as the basis for dismissal of Smith's claims. The Louisiana Supreme Court had the last reasoned decision citing both Article 930.3 and *State ex rel. Melinie* as the basis for its dismissal of Smith's claims. The

State's failure to mention these reasons for denial and its failure altogether to mention procedural default is a result of the respondent's unfamiliarity with the federal standards of habeas corpus review and was not a purposeful decision to forgo the defense. The State has not in any manner made an express waiver of the procedural default defense in this case. For these reasons, the Court finds that it is appropriate to consider the procedural default of the claims as imposed by the Louisiana Supreme Court under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*.

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360.

## IV. Procedural Default

As noted above, Smith raised his five claims in his last application for post-conviction relief to the state courts. The claims were denied by the Trial Court for lack of proof of a ground for relief under La. Code Crim. P. art. 930.3. The Louisiana First Circuit denied the related writ application without specific reasons discernable from the record. The Louisiana Supreme Court thereafter denied relief on these claims pursuant to La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*. This was the last reasoned decision on these claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260,

262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

This Court must consider whether the bar to review relied upon by the Louisiana Supreme Court prohibits consideration of the claim on federal habeas corpus review.

### A. **Independent and Adequate State Grounds**

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Glover*, 128 F.3d at 902.  The question of the adequacy of a state procedural bar is itself a federal question.  *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).

In this case, the basis for the Louisiana Supreme Court's bar to review were the state procedural requirements found in La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*, which prohibit post-conviction review of claims of excessive sentence and other sentencing errors.  The Louisiana Supreme Court extended this prohibition to matters arising from multiple offender

proceedings and sentences. *State ex rel. Brown v. State*, 870 So.2d 976 (La. 2004). The bar was therefore based in state law and independent of Smith's federal claims.

A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Glover*, 128 F.3d at 902; *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.1997) (in order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule). A federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts do not honor that bar. *Accord Davis v. Johnson*, No. 4:00CV684-Y, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*,

No. 97-1546, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). Where such foundation and basis does exist, the bar must stand.

In this case, the state courts relied on La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* to bar review of Smith's post-conviction claims challenging his multiple offender proceedings and sentence, including the adequacy of his counsel. The federal courts have repeatedly held that the La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* are both independent and adequate state law grounds for dismissal which bar review of similar claims by the federal courts in a habeas corpus proceeding. *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Art. 930.3, *State ex rel. Melinie*) (Table, Text in Westlaw); *Taylor v. Cain*, No. 07-3929, 2008 WL 4186883, at *16 (E.D. La. Sep. 10, 2008); *Williams v. Cain*, No. 05-0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008); *Madina v. Cain*, No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sep. 20, 2006); *Johnson v. Andrews*, No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); *Williams v. Miller*, No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. Jul. 24, 2006); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. Jun. 30, 2005); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. Jul. 31, 2000); *Ardis v. Cain*, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999).

The Court reiterates that it is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274 at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). The Louisiana courts' decision to bar such claims is within

their authority and prerogative. As such, as in this case, the Court finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 is adequate to bar review of the merits of Smith's ineffective assistance of counsel claims during the multiple offender sentencing proceeding. *See Lott v. Miller*, No. 05-6046, 2008 WL 4889650 at *1 n.1 (E.D. La. Nov. 3, 2008) (Africk, J.) (applying Art. 930.3 to an ineffective assistance of counsel claim); *see also*, *Richardson v. Cain*, No. 07-2999, 2010 WL 1838642, at *11 (E.D. La. Apr.1, 2010), *adopted by*, 2010 WL 1837924 (E.D. La. May 3, 2010); *Wallace v. Cain*, No. 06-11271, 2009 WL 3367052, at *14 (E.D. La. Oct. 15, 2009); *Simmons v. Cain*, No. 06-2299, 2006 WL 3524144, at *6-7 (E.D. La. Sept. 18, 2007); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8-9 (E.D. La. Jun. 30, 2005).

Smith will be excepted from the procedural bar to federal review of his claims only if he can show cause for his defaults and prejudice attributed thereto. Alternatively, he could demonstrate that the federal court's failure to review the claims will result in a fundamental miscarriage of justice. *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)). These exceptions to the imposition of a bar will be addressed below.

### B.     Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Smith has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. The Court's review of the record does not support a finding that any factor external to the defense prevented Smith from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Smith's claims are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural

rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[42]

### C.   Fundamental Miscarriage of Justice

Smith may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Smith does not present any indication and the record contains nothing that suggests his actual innocence on the underlying convictions. His claims address alleged procedural failings in the multiple offender proceedings, and not his actual innocence. He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default. He has failed to overcome

---

[42]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. *Id*.

the procedural bar to his claims. The claims are procedurally barred and can be dismissed with prejudice for that reason.

**V.      Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Virgil L. Smith's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[43]

New Orleans, Louisiana, this 30th day of June, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[43]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.